CHARLES MURRAY GRATZ v. BERNICE WEST GRATZ.

173 So. 442.
Opinion Filed March 29, 1937.

*John S. Lavin* and *Duncan, Hamlin & Duncan,* for Appellant;

*J. W. Hunter, E. W. & R. C. Davis* and *E. W. Davis,* for Appellee.

DAVIS, J.—This is a divorce suit, here on appeal from an order denying a motion to strike and motion to dismiss the

plaintiff's bill. The principal allegations of the bill to which appellant's attack is directed are as follows:

"Your oratrix would show that in respect to the charges of cruelty, that the defendant, in about the month of June, 1931, commenced to exhibit toward your oratrix a coldness of manner and utter disregard of her welfare, and in an indifference to her happiness or even existence; to such extent has this coldness and disregard, and indifference systematically been carried that defendant treated your oratrix as an inferior being, a mere convenience to perform household duties and entertain guests and business associates of the defendant. And in this respect, in about the month of June, 1933, for the purpose of humiliating and torturing your oratrix, the defendant told her that he did not love her, that in fact he had lost all love for her six months previously; and in furtherance of a deliberate plan to inflict on your oratrix intense mental pain and humiliation, continually abused your oratrix's mother and father, continually denouncing her father as a mere money maker, without any charitable thought, or thought on any subject save, except, and along the acquisition of money; that her mother was insane and should have been committed to an institution years ago. That your oratrix entertains the usual affection existing between child and parents; that such abuse of parents of your oratrix was a matter of continual occurrence from the date of their said marriage, defendant even insisting that as a consideration for the further recognition on his part of the martial relation, your oratrix should cease all communication with her parents.

"Your oratrix further shows that at a reception at the home of a Mrs. Phillips, on about May 20, 1933, the defendant, in the hearing of many other guests, and without cause or justification, called your oratrix a 'God-damn fool,'

and said in a loud and insulting manner that he could not bear the sight of her; that he never wanted to see her again, and that he was absolutely through; and repeated several times that he was absolutely through, meaning that so far as the marriage relations were concerned, the same were terminated. And again on April 1, 1933, the defendant called this complainant in a vicious and insulting manner a 'God-damn fool,' and frequently thereafter applied the same insulting epithet to this complainant.

"That on or about the 24th day of February, 1934, the defendant suggested, without cause or provocation on the part of the complainant, that a divorce be obtained, and suggested that your oratrix procure the same, and informed your oratrix that he would be satisfied with nothing but an absolute divorce from her; and continually thereafter the defendant recurred to the question of your oratrix procuring a divorce, and repeatedly solicited your oratrix for suggestions as to how the same might or could be effected. And again, as a part of the plan of studied insults, and for the purpose of inflicting mental torture on this complainant, on May 14, 1933, at the Nassau County Art League's annual dance the defendant used insulting language to your oratrix, and to her great humiliation, in the presence of others, refused to dance with her.

"That on December 21, 1931, the defendant in a fit of rage referred to complainant's mother as a God-damned mother-in-law, and cursed and swore at the complainant and God-damned all of her ancestors, to and including her great-great-great-great-grandparents; and at that time not content with driving the complainant from the room by his profanity and abuse, the defendant pursued the complainant from room to room of their apartment until, after the lapse of several hours, he became exhausted and desisted.

"That on or about December 23, 1931, the defendant attempted to extort from the father of your oratrix the sum of One Hundred Thousand Dollars ($100,000.00) as a consideration for 'holding the bag with my wife in place of the signer of approximately six months,' meaning and insinuating that the said defendant should be paid one hundred thousand dollars as a consideration for living with your oratrix for six months, knowledge of which attempted extortion came to your oratrix eighteen months prior to the filing. of this bill, and caused your oratrix. excruciating mental pain, suffering, and anguish.

"Your oratrix would further show that on August 1, 1932, the defendant in a fit of rage threatened to strike your oratrix with a milk bottle; and upon another occasion about the month of April, 1934, the defendant told a mutual acquaintance that he was through with the complainant, that he never would live with her again for fear that there might be another child born and thereupon complainant's hold upon him, the defendant, be increased; and boasted that he had had affairs with two other women during complainant's absence in Florida. All of which the defendant knew or should have known would be communicated to your oratrix; and in fact it was communicated to her prior to the filing of this bill.

"That during the spring of 1933, while preparing to attend a benefit dance, the defendant, for the sole purpose of humiliating and torturing your oratrix, in the presence of others bemeaned and abused your oratrix; and to further humiliate your oratrix and to exhibit his utter disregard and contempt for her, in the presence of her and her friends, commenced a flirtation over the telephone with a young lady telephone operator, proposing and attempting to date the said operator for some future party.

"'Your oratrix shows that the defendant, within a few months of the marriage above referred to, refused to provide the complainant with clothing, food, or other necessities of life, or to provide a home for your oratrix, or clothes or food or shelter for the minor child above mentioned; although during all the referred to period of time the defendant was capable of and was earning at his profession as surgeon an income ranging from $10,000.00 to $19,000.00 per year.

"And your oratrix, in a conscious effort to make said marriage happy and successful, although she was without funds, was able to and did secure same from her father, and by this means provided sufficient funds to shelter and clothe herself and child, and during a portion of said time this complainant was forced to and did wash and iron the clothes of the defendant, although at the time the defendant was able financially to employ the services of others to do said work. And during said time the defendant would and did require the complainant to start his car and bring it around to the door in order that he might walk out, step into his car, and drive to his office; and in fact at all times treating your oratrix as a menial and inferior being, as a mere possession, without any will or rights of her own. And during all of said time, and up to August, 1934, the defendant by studied neglect, abuse, insults, abuse of complainant's parents; failure and refusal to support, and by other ways and means, has planned to and has inflicted mental torture and extreme cruelty upon your oratrix, so that she, having been raised in a home of refinement and mutual respect and love, lived in a state of mental torture and distress; all of which seriously impaired her health, drove her to the verge of a nervous breakdown, and rendered the fulfillment and discharge of marital duties impracticable."

610

The allegations of the bill of complaint, as above set forth, are sufficient under Chapter 14658, Acts of 1931 (The Chancery Act) to show, in brief and succinct terms, extreme cruelty by defendant toward complainant, within the meaning and intent of paragraph 4, Section 4983, C. G. L., 3191 R. G. S., prescribing extreme cruelty as a ground of divorce. This is so, because we have heretofore announced the view in Roebling v. Roebling, 119 Fla. 768, 161 Sou. Rep. 715, that a continued and persistent course of ruthless acts of connubial misbehavior purposely exhibited by one spouse toward the other with an associated force calculated to inhibit the injured spouse from discharging with reasonable safety and peace of mind the marital relations between the parties over a considerable period of time and not casually, may make out a case not only of cruelty, but of *extreme* cruelty, within the intent of the divorce statute prescribing the latter as ground for divorce.

The rationale of the rule is similarly applicable to a charge of violent and ungovernable temper when pleaded under the statute as cause for divorce under a like theory of cumulative effect.

The order appealed from is confirmed and the cause remanded for further proceedings according to law.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.